IN THE UNTIED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| ADAM MAZUR | ) | CASE NO. |
| 3987 E. 52ND STREET | ) | |
| NEWBURGH HEIGHTS, OHIO 44105 | ) | JUDGE: |
| | ) | |
|     Plaintiff, | ) | |
|         v. | ) | **COMPLAINT** |
| | ) | |
| MAYOR TREVOR ELKINS | ) | |
| In his official and individual capacities | ) | |
| 4000 WASHINGTON PARK BOULEVARD | ) | **(Jury Demand Endorsed Herein)** |
| NEWBURGH HEIGHTS, OHIO 44105 | ) | |
| | ) | |
|     And | ) | |
| | ) | |
| VILLAGE OF NEWBURGH HEIGHTS | ) | |
| C/O LUKE MCCONVILLE | ) | |
| DIRECTOR OF LAW | ) | |
| 4000 WASHINGTON PARK BOULEVARD | ) | |
| NEWBURGH HEIGHTS, OHIO 44105 | ) | |
| | ) | |
|     And | ) | |
| | ) | |
| POLICE CHIEF JOHN MAJOY | ) | |
| In his official and individual capacities | ) | |
| NEWBURGH HEIGHTS POLICE DEPT | ) | |
| 3807 HARVARD AVENUE | ) | |
| NEWBURGH HEIGHTS, OHIO 44105 | ) | |
| | ) | |
|     And | ) | |
| | ) | |
| LEIUTENANT MICHAEL MARNIELLA | ) | |
| In his official and individual capacities | ) | |
| NEWBURG HEIGHTS POLICE DEPT | ) | |
| 3807 HARVARD AVENUE | ) | |
| NEWBURGH HEIGHTS, OHIO 44105 | ) | |
| | ) | |
|     And | ) | |
| | ) | |
| NEWBURGH HEIGHTS POLICE DEPT | ) | |

| | |
|---|---|
| 3807 HARVARD AVENUE | ) |
| NEWBURGH HEIGHTS, OHIO 44105 | ) |
| | ) |
|     And | ) |
| | ) |
| COUNSELMAN WILLIAM DUNMAN | ) |
| In his official and individual capacities | ) |
| NEWBURG HEIGHTS POLICE DEPT | ) |
| 3807 HARVARD AVENUE | ) |
| NEWBURGH HEIGHTS, OHIO 44105 | ) |

Plaintiff, Adam Mazur ("Mazur"), for his Complaint against Defendants Mayor Trevor Elkins ("Elkins"), Village of Newburgh Heights ("City"), Police Chief John Majoy ("Majoy"), Lieutenant Michael Marniella ("Marniella"), Newburgh Heights Police Department ("NHPD"), and Councilman William Dunman ("Dunman") states as follows:

**JURISDICTION AND VENUE**

1. Mazur brings this civil right lawsuit pursuant to 42 U.S.C. § 1983 to redress the deprivation, by the Defendants under color of state law, of the rights, privileges, and immunities secured to him under the First, Fourth and Fourteenth Amendments to the United States Constitution.

2. This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 over Mazur's cause of action arising out of the Constitution of the United States and 42 U.S.C. § 1983 and pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. This Court has supplemental jurisdiction over Mazur's causes of action arising under the Ohio state law pursuant to 28 U.S.C. § 1367.

3. Venue lies in the United States District Court for the Northern District of Ohio pursuant to §1391 and §1392, because the events or omissions giving rise to Mazur's claims occurred in Cuyahoga County, Ohio, and all of the parties reside in this federal district.

## PARTIES

4. Plaintiff, Adam Mazur, at all times herein was a citizen of the United States and a resident of Cuyahoga County, Ohio.

5. As a citizen of the United States of America Adam Mazur is guaranteed the protection of the First and Fourth Amendments.

6. As a citizen of the United States of America Adam Mazur is guaranteed the protection of the Fourteenth Amendment.

7. At all times, and in all his actions described herein, Defendant John Majoy was the Chief of Police employed by the Newburgh Heights Police Department, a municipality organized and existing pursuant to the laws of the State of Ohio.

8. At all times herein, and in all his actions described herein, Defendant Majoy was acting under the color of law, including the customs, usages, policies, and practices established by the Newburgh Heights Police Department, and in his capacity pursuant to his authority as a Chief of Police for the Newburgh Heights Police Department.

9. Defendant Majoy is also sued individually.

10. At all times, and in all his actions described herein Defendant Michael Marniella was a Lieutenant employed by the Newburgh Heights Police Department, a municipality organized and existing pursuant to the laws of the State of Ohio.

11. At all times herein, and in all his actions described herein, Defendant Marniella was acting under the color of law, including the customs, usages, policies, and practices established by the Newburgh Heights Police Department, and in his capacity pursuant to his authority as a Lieutenant for the Newburgh Heights Police Department.

12. Defendant Marniella is also sued individually.

13. Defendant Newburgh Heights Police Department ("NHPD") establishes the practices, customs, usages, polices, and practices to be used by its officers, detectives, and other personnel.

14. At all times, and in all his actions described herein Defendant Trevor Elkins was the mayor employed by the Village of Newburgh Heights, a municipality organized and existing pursuant to the laws of the State of Ohio or he was running as an official candidate for Mayor.

15. At all times herein, and in all his actions described herein, Defendant Elkins was acting under the color of law, including the customs, usages, policies, and practices established by the Village of Newburgh Heights, and in his capacity pursuant to his authority as Mayor of Newburgh Heights.

16. Defendant Elkins is also sued individually.

17. At all times, and in all his actions described herein Defendant William Dunman was a councilman employed by the Village of Newburgh Heights, a municipality organized and existing pursuant to the laws of the State of Ohio.

18. At all times herein, and in all his actions described herein, Defendant Dunman was acting under the color of law, including the customs, usages policies, and practices established by the Village of Newburgh Heights, and in his capacity pursuant to his authority as a Councilman for the Village of Newburgh Heights.

19. Defendant Dunman is also sued individually.

20. Each and every act and omission of each Defendant alleged herein occurred in the County of Cuyahoga and State of Ohio.

## FACTS

21. Defendant Elkins was first elected as Mayor of Newburgh Heights in 2011.

22. A criminal investigation into Defendant Elkins's behavior focusing on acts of theft in office and other criminal acts committed by the mayor began in 2021.

23. Mazur, and other concerned citizens, openly called for Defendant Elkins to step down from his position because of the criminal investigation.

24. Defendant Elkins created a scheme to anonymously, maliciously, and deceptively attack his political critics and silence their constitutionally protected criticism of him.

25. Defendant Elkins, as a part of his scheme, created a series of anonymous websites focused on silencing his critics.

26. Defendant Elkins, as part of his scheme, took steps to conceal and to further keep his relationship to these websites anonymous so that it could not be traced to him.

27. Defendant Elkins registered and created a domain name called "adammazur.net" on November 24, 2021, with a registry domain ID 2657135309_DOMAIN_NET-VRSN.

28. Defendant Elkins attempted to keep his involvement, creation, and frequent updates of this website secret by redacting, and keeping anonymous, his identity as the registrant.

29. Defendant Elkins registered and created a domain name called "toddjknight.com" on November 24, 2021, with a registry domain ID 2657135401_DOMAIN_COM-VRSN.

30. Defendant Elkins registered and created a domain name called "anthonydattilo.com" on November 24, 2021, with a registry domain ID 2657137040_DOMAIN_COM-VRSN.

31. Defendant Elkins registered and created a domain name called "nickzbasnik.com" on November 29, 2021, with a registry domain ID 2658380971_DOMAIN_COM-VRSN.

32. Defendant Elkins registered and created a domain name called "hehitswomen.com" on December 11, 2021, with a registry domain ID 2660899192_DOMAIN_COM-VRSN.

33. Defendant Elkins registered and created a domain name called "tonyhiresprostitutes.com" on December 11, 2021, with a registry domain ID 2660899306_DOMAIN_COM-VRSN.

34. Defendant Elkins attempted to keep his involvement, creation, and frequent updates of the above-named websites secret by redacting, and keeping anonymous, his identity as the registrant.

35. Defendant Elkins reached a plea deal with the State of Ohio by which he admitted the truth of his criminal conduct while in office. This plea deal required Defendant Elkins to resign as Mayor in 2022.

36. Defendant Elkins, despite having been convicted of and openly admitting to crimes he committed previously while in office, announced in May 2023 that he would again run for Mayor of Newburgh Heights.

37. Defendant Elkins updated the adammazur.net domain on July 30, 2023, at 1:12 p.m. in order to further advance his scheme against Mr. Mazur.

38. Defendant Elkins used a provider called "ClickFunnels" in order to publish, update, and drive traffic to all of the websites he created, including adammazur.net.

39. Clickfunnels is an internet-based marketing company primarily designed to drive the maximum amount of traffic (internet viewers) to a product. Defendant Elkins used this service to drive viewers to the domains he created to anonymously attack those he perceived as his political rivals.

40. On or about January 2, 2024, Mazur, lawfully communicated with Defendant Dunman seeking assistance in having Defendant Elkins remove the website "adammazur.net", which Mazur correctly believed was created by Defendant Elkins.

41. Plaintiff communicated with Dunman, a councilman, for the sole purpose of having Defendant Elkins remove the anonymous derogatory and defamatory website aforementioned.

42. Plaintiff's communication was limited to a single series of text messages directed to the phone that Defendant Dunman used for official city business.

43. Defendant Dunman soon after informed Defendant Majoy, Defendant Elkins, and former Law Director for the Village of Newburgh Heights, Vince Ruffa, of the communication from Mazur.

44. Defendants Majoy and Marniella, aware of the defamatory website created by Elkins, created a police report in which Mazur was wrongfully named as a suspect, despite their knowledge that he had not broken the law.

45. Defendant Majoy then advised Defendant Dunman to seek a protection order, even though no reasonable person would believe Mazur had committed any act that would warrant a protection order.

46. On January 5, 2024, Defendant Dunman filed for an *ex parte* civil stalking protection order from the Cuyahoga County Common Pleas Court.

47. Defendant Dunman was transported to this *ex parte* hearing in an official Newburgh Heights Police vehicle and was accompanied by Defendant Majoy at every pretrial conference prior to the full hearing on the civil stalking protection order.

48. The *ex parte* civil stalking protection order was brought on for a full hearing on February 27, 2024. Defendant Majoy attended the hearing and brought Defendant Dunman to the hearing before Magistrate Joseph Jackson in an official police cruiser.

49. Defendant Majoy testified on behalf of Defendant Dunman at the full hearing, stating that he normally would not involve himself in civil matters, but that he took interest in this issue.

50. At the full hearing seeking the civil stalking protection order the defendants present recognized that Defendant Dunam was not going to prevail and Defendant Majoy, even

though he knew that there would be no basis for any criminal action against Mazur, threatened Mazur with felony charges of extortion.

51. Magistrate Jackson summarily denied Defendant Dunman's request for a protection order.

52. On March 11, 2024, Judge Nancy Fuerst's adoption of Magistrate Jackson's decision and denial of the civil protection order was formalized and filed by the Cuyahoga County Common Pleas Court.

53. On April 17, 2024, Defendants, knowing that a magistrate and common pleas judge had reviewed all of the facts of this matter, and knowing that they found no cause, decided to seek and obtain a search warrant for Mazur's phone.

54. On May 9, 2024, Defendants, in retaliation for Mazur's victory at the temporary protection hearing and knowing there was no basis to believe a crime occurred, along with Lieutenant Marniella, executed two warrants for Mazur's arrest after filing formal charges for Coercion and Telecommunications Harassment.

55. Defendant Majoy included a copy of the *ex parte* order temporarily granting protection in the official police report; however, he intentionally omitted the results of the full protection order hearing that he personally attended and testified at.

56. Defendant Majoy omitted the full decision on the protection order in an attempt to harm Mazur; including but not limited to Mazur's due process rights, rights to present a defense, and his right to be free from malicious prosecution.

57. Defendant Majoy, knowing that Mazur had prevailed on the protection order, elected to swear out an affidavit charging Mazur with criminal conduct.

58. Defendant Majoy did not present the criminal charges to a neutral magistrate or even a prosecutor for a charging decision.

59. Defendant Majoy knew that the statements Mazur made about Dunman were true; specifically, but not limited to, the fact that Dunman was convicted for negligent homicide.

60. Defendant Majoy knew that Mazor's statements that Elkins was behind the website adammazur.net was a true statement.

61. It is uncommon for charges of Coercion and Telecommunications Harassment to result in a warrant issued rather than summons.

62. On May 10, 2024, Mazor responsibly self-surrendered to the police department.

63. On October 21, 2024, the criminal matter under case number CRB 2400657 came on for trial in the Garfield Heights Municipal Court before assigned judge Ralph J. Perk, Jr.

64. Defendant Elkins, knowing that he had created an anonymous website about Mazur, remained in the courtroom gallery for the entirety of the trial.

65. Defendant Elkins, knowing that he was responsible for charges being brought against Mazur that were not based on probable cause but rather a political animus, wanted to ensure that a conviction occurred.

66. At the close of evidence, Judge Perk agreed with Mazur that the matter should be dismissed and granted the defense's motion for acquittal rather than sending it to the jury.

67. Separate litigation was necessary to determine the source of the anonymous websites that triggered the criminal charges in the underlying matter. This litigation determined that Defendant Elkins was the creator of the anonymous website Adammazur.net, where false and defamatory information was maliciously and recklessly provided about Mazur's personal life.

68. Defendant Elkins was running for Mayor in the village of Newburg Heights, Mazur was openly against Defendant Elkins' campaign because Defendant Elkins' conviction for

9

misappropriating city and campaign funds should have, in Mazur's opinion, made Elkins unworthy of office.

69. Defendant Elkins continued to anonymously update the website he had created by posting a screenshot of the Garfield Heights Municipal Court case intentionally misleading the public about the results of the case.

70. Defendant Elkins intentionally created the website specifically to slander Plaintiff and attempt to discredit Plaintiff while Defendant Elkins was campaigning for Mayor.

71. Defendant Elkins enlisted the help of the other defendants in order to harass, intimidate, and violate Mazur's civil rights all because Mazur was a citizen opposed to Elkins' election as mayor.

72. Defendants' conduct was willful, with malicious purpose, in a wanton and reckless manner as it relates to their actions here.

**FIRST CAUSE OF ACTION-  42 U.S.C. §1983  MALICIOUS PROSECUTION**

73. Plaintiff restates and reavers the allegations contained in paragraphs one through seventy-two as if fully restated herein.

74. Defendants maliciously initiated criminal proceedings against Mazur with each Defendant participating, influencing, or making the decision to prosecute Mazur.

75. Defendants, knowing that there was no probable cause for criminal proceedings to continue against Mazur, caused the prosecution to continue.

76. Defendants intentionally and unreasonably caused an arrest warrant to be issued that they knew was not based on probable cause.

77. Defendants issued the warrant for Mazur's arrest without probable cause and without prosecutorial oversight.

78. Defendants intentionally and unreasonably caused Mazur to be arrested and booked into jail without probable cause before being released on bail.

79. Defendants knew that Mazur did not harass or subject Defendant Dunman to coercion.

80. Defendants knew that Plaintiff did not commit the act of Telecommunications Harassment as it relates to Defendant Dunman; or that no reasonable police officer would believe that there was probable cause a crime had occurred in this case.

81. Defendants knew that Mazur's conduct was protected First Amendment conduct and that such arrest, warrant, and charges violated Mazur's rights under the First, Fourth, Fifth, and Fourteenth Amendments.

82. Defendants knew that at the time the arrest warrants were drafted that two judicial officials had already ruled that there was no coercion or reason to believe Defendant Dunman was The victim of a civil stalking action.

83. Defendants Majoy and Marniella intentionally withheld exculpatory material from the prosecutor handling the case; including but not limited to only providing a copy of the *ex parte* protection order and not providing a full copy of the judicial order denying the protection order.

84. Defendants Majoy and Marniella directly influenced and had considerable discretion in bringing the charges against Plaintiff Mazur.

85. Defendants' conduct causing criminal charges, a legal proceeding for § 1983 liability, to be initiated against Mazur, forcing him to surrender and be detained by the government deprived Mazur of his liberty.

86. Defendants' violated Mazur's First and Fourth Amendment rights as enshrined in the Bill of Rights to the United States Constitution.

87. Mazur ultimately prevailed in the legal proceedings below with the trial court dismissing the case at trial rather than submitting it to the empaneled jury.

88. Mazur, as a result of Defendants' conduct, incurred legal fees, embarrassment, and other damages.

89. As a direct and proximate result of said wrongful, tortious, illegal, and unconstitutional acts of Defendants, Plaintiff was wrongfully incarcerated, causing Plaintiff to suffer economic damages in an amount to be ascertained, said damages being continuing in nature.

90. The actions of Defendants Majoy, Marniella, and NHPD were intentional, malicious, willful, oppressive, and in deliberate disregard for the rights of the Plaintiff, so as to entitle Plaintiff to an award of punitive damages and attorney's fees, in addition to compensatory damages.

## SECOND CAUSE OF ACTION- 42 U.S.C. §1983 MONNELL LIABILITY

91. Plaintiff restates and reavers the allegations contained in paragraphs one through ninety as if fully restated herein.

92. Defendant Majoy is the Chief of Police of NHPD and responsible for the training and oversight of all of its officers, including Defendant Marniella.

93. NHPD have a pattern of conduct for failing to train its command officers, lieutenants, and officers.

94. NHPD failed to provide proper training for their officers, lieutenants, and command officers, thereby resulting in the violation of Plaintiff's constitutional rights as described herein.

95. NHPD failed to promulgate policies, plans, and procedures designed to protect the civil rights of the persons who come in contact with its officers, thereby resulting in violations of Plaintiff's constitutional rights as described herein.

96. Defendant Elkins is the Mayor of Newburgh Heights and is able to influence, direct, and control Defendant Majoy.

97. Defendant Majoy escorted Defendant Dunman to testify against Mazur, in a civil protection proceeding, in an official marked police car.

98. Defendant Majoy directly attempted to intimidate and coerce Mazur into surrendering valuable legal rights where there was no probable cause to believe that Mazur had committed the act of extortion as claimed by Majoy.

99. Defendants' actions deprived Mazur of his constitutional rights and were based on governmental custom as dictated by Defendant Elkins and Majoy.

100. Defendants abused the government policy of issuing warrants without prosecutorial oversight to deprive Mazur of his legitimate constitutional rights and Mazur was harmed as a result.

101. Defendant Majoy did not train Defendant Marniella that this policy and specific use was unconstitutional.

102. Defendants conduct here consisting of all of the *Monell* elements violated Mazur's civil rights.

### THIRD CAUSE OF ACTION- 42 U.S.C. §1983 FALSE ARREST/IMPRISONMENT

103. Plaintiff restates and reavers the allegations contained in paragraphs one through one-hundred-two as if fully restated herein.

104. Defendants intended to and did seize and confine the person of Plaintiff.

105. The arrest of Plaintiff was intentional and caused without probable cause.

106. Defendant Elkins needed Plaintiff Mazur to be prosecuted, tried, and convicted in order to prevent the revelation that Defendant Elkins was the source behind the anonymous websites attacking his own constituents.

107. As a direct and proximate result of the improper arrest, Plaintiff has suffered humiliation, embarrassment, loss of reputation, severe mental anguish, emotional distress, and was otherwise damaged.

108. As a further direct and proximate result of the false imprisonment, Plaintiff has suffered economic damages in an amount to be ascertained, said damages being continuing in nature, including, but not limited to lost income.

109. Defendants' actions were malicious, in bad faith, and wanton and/or reckless within the meaning of Ohio Revised Code Section 2744.03(A)(6)(b).

110. Defendants were intentional, malicious, willful, wanton, and oppressive and in deliberate disregard for the rights of Plaintiff, so as to entitle Plaintiff to an award of punitive damages in addition to compensatory damages against each defendant.

**FOURTH CAUSE OF ACTION – 42 U.S.C. §1983 VIOLATION OF PLAINTIFF'S RIGHT TO BE FREE FROM UNREASONABLE SEIZURES**

111. Plaintiff reavers the allegations contained in paragraphs one through one-hundred-ten above as if fully stated herein.

112. Plaintiff is entitled to the full protections of the Fourth Amendment to the United States Constitution.

113. Plaintiff is permitted to bring a claim under 42 U.S.C. §1983 for violations of the Fourth Amendment as held in *Manuel v. Illinois*, 540 U.S. ____ (2017).

114. Defendants detained Plaintiff without probable cause.

115. Defendants violated Plaintiff's Fourth Amendment Rights when he was detained without probable cause.

116. Defendants violated Plaintiff's Fourth Amendment Rights when Defendants issued a search warrant for his cellphone records without probable cause.

14

117. As a direct result of Defendants' conduct, Plaintiff suffered injury to his reputation, was humiliated and subject to indignities, and suffered great stress of body and mind, incurred expenses including attorney fees and was otherwise damaged.

**FIFTH CAUSE OF ACTION – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

118. Plaintiff reavers the allegations contained in paragraphs one through one-hundred-seventeen as if fully restated herein

119. Defendants through their aforementioned conduct above, intended to cause severe emotional distress to Plaintiff and knew or should have known that their conduct would result in severe emotional distress to Plaintiff.

120. As a result of Defendants' conduct, Plaintiff suffered severe emotional distress.

**SIXTH CAUSE OF ACTION – RECKLESS INFLICTION OF EMOTIONAL DISTRESS**

121. Plaintiff reavers the allegations contained in paragraphs one through one-hundred-twenty as if fully restated herein

122. Defendants' aforementioned conduct above was extreme and outrageous.

123. Defendants, through their aforementioned conduct, were reckless as they had reason to believe that their conduct created an unreasonable risk of emotional harm to Plaintiff.

124. As a result of Defendants' conduct, Plaintiff suffered severe emotional distress.

**SEVENTH CAUSE OF ACTION – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

125. Plaintiff reavers the allegations contained in paragraphs one through one-hundred-twenty-four as if fully restated herein

126. Defendants owed Plaintiff a duty of care to act as an ordinarily and reasonable and prudent person under the circumstances.

127. Defendants breached that duty of care owed to Plaintiff by criminally charging Plaintiff without probable cause.

128. Defendant Elkins acted willfully in his publishing of a slanderous website, causing extreme mental distress for Plaintiff.

129. As a result of Defendants' conduct, Plaintiff suffered severe and debilitating mental distress and injury.

### EIGHTH CAUSE OF ACTION- CIVIL CONSPIRACY

130. Plaintiff restates and reavers the allegations contained in paragraphs one through one-hundred-twenty-nine as if fully reinstated herein.

131. Defendants wrongfully and tortiously conspired to violate the civil rights of Plaintiff by conspiring to deprive him of his First Amendment Right to criticize Defendant Elkins for being convicted of crimes while in office, and to deprive him of his Fourth Amendment Rights against arrest warrants not based upon probable cause, Fourth Amendment Rights against search warrants without probable cause upon Plaintiff's property, and freedom from retaliatorily and malicious prosecution, charging him criminally after Defendants failed to obtain a frivolous and baseless civil stalking protection order.

132. Defendants conspired to maliciously prosecute Plaintiff, by providing false and misleading information in official reports and affidavits and by otherwise conspiring to violate Plaintiff's civil rights.

133. The actions of Defendants as described herein, were overt acts done in the furtherance of the conspiracy.

134. Defendants, acting in a combination of two or more persons, conspired to injure Plaintiff in a way that would not occur if each acted alone.

135. As a direct and proximate result of wrongful, tortious, illegal, and unconstitutional acts of Defendants, Plaintiff has suffered, is suffering, and will continue to suffer humiliation, embarrassment, loss of reputation, severe mental anguish, and emotional distress, and was otherwise damaged.

136. As a further direct and proximate result of the tortious, illegal, and unconstitutional acts of Defendants, Plaintiff has suffered, is suffering, and will continue to suffer the loss of earnings and earning capacity.

137. The actions of Defendants were done in the furtherance of a conspiracy and were intentional, malicious, willful, wanton, and oppressive, and in deliberate disregard for the rights of Plaintiff, so as to entitle Plaintiff to an award of punitive damages in addition to compensatory damages against each defendant.

## NINTH CAUSE OF ACTION- MALICIOUS PROSECUTION AND VIOLATION OF STATE LAW

138. Plaintiff restates and reavers the allegations contained in paragraphs one through one-hundred-thirty-seven as if fully reinstated herein.

139. Defendants executed a search warrant in violation of Ohio Revised Code Section 2935.12 and 2933.231.

140. Defendants maliciously and without probable cause charged Plaintiff with the criminal offenses of Coercion and Telecommunication Harassment.

141. The criminal charges were dismissed by the court only after he had incurred serious financial, personal, and other damages as described above.

142. The aforementioned charges filed against Plaintiff were based upon false and misleading information provided by Defendants.

143. As a direct result of malicious prosecution of the Plaintiff by Defendants, Plaintiff suffered injury to his reputation, was humiliated and subject to indignities, suffered great stress of body and mind, was prevented from transacting his business, incurred expenses, and was otherwise damaged.

## TENTH CAUSE OF ACTION- RETALIATION

144. Plaintiff restates and reavers the allegations contained in paragraphs one through one-hundred-forty-three as if fully reinstated herein.

145. Defendants charged Plaintiff with the crimes of Coercion and Telecommunication Harassment in retaliation after their failed attempt to succeed on the civil stalking protection order.

146. Defendants initiated the charges and the search warrant of Plaintiff's phone only after the denial of the civil stalking protection order by Magistrate Jackson and Judge Fuerst.

147. Defendant Majoy threatened to charge Plaintiff with Extortion on record at the Civil Stalking Protection Order full hearing.

148. The actions of Defendants were intentional, malicious, willful, oppressive, and in deliberate disregard for the rights of the Plaintiff, so as to entitle Plaintiff to an award of punitive damages and attorney's fees, in addition to compensatory damages.

## ELEVENTH CAUSE OF ACTION- FALSE ARREST/IMPRISONMENT

149. Plaintiff restates and reavers the allegations contained in paragraphs one through one-hundred-forty-eight as if fully restated herein.

150. As a direct and proximate result of the improper arrest, Plaintiff has suffered humiliation, embarrassment, loss of reputation, severe mental anguish, emotional distress and was otherwise damaged.

151. As a further direct and proximate result of the false imprisonment, Plaintiff has suffered economic damages in an amount to be ascertained, said damages being continuing in nature, including, but not limited to lost income.

152. Defendants' actions were malicious, in bad faith, and wanton and/or reckless within the meaning of Ohio Revised Code Section 2744.03(A)(6)(b).

153. Defendants were intentional, malicious, willful, wanton, and oppressive and in deliberate disregard for the rights of Plaintiff, so as to entitle Plaintiff to an award of punitive damages in addition to compensatory damages against each defendant.

## DAMAGES

WHEREFORE, Plaintiff respectfully requests judgment against Defendants, jointly and severally, as follows:

A. An award in excess of $250,000.00 in compensatory damages against each defendant pursuant to each count;

B. An award in excess of $250,000.00 in punitive damages against each of the individual defendants for the willful and wanton disregard of the rights of Plaintiff;

C. Costs, interest, attorney fees, and such other relief as this Court deems just and proper.

Respectfully submitted,

By: /s/ Joseph C. Patituce
Joseph C. Patituce (#0081384)
Catherine A. Purdum  (#0102614)
Patituce & Associates, LLC.
16855 Foltz Industrial Parkway
(440) 471-7784 (office)
(440) 398-0536 (fax)
attorney@patitucelaw.com

## **JURY DEMAND**

 Plaintiff hereby demands a trial by jury as to all issues raised in the herein action comprised of the maximum number of jurors permitted by law.

        By: /s/ Joseph C. Patituce
        Joseph C. Patituce (#0081384)
        Catherine A. Purdum (#0102614)
        Attorneys for Plaintiff, Adam Mazur